IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GAIL PATRICIA ALMOND VOGEL      \*
     \*
     v.      \*      Civil Case No. GLR-13-911
     \*
COMMISSIONER, SOCIAL SECURITY      \*
     \*
     *************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions and the Plaintiff's reply. ECF Nos. 12, 14, 18. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied and the case be remanded to the Commissioner.

Ms. Vogel applied for Disability Insurance Benefits ("DIB") on December 21, 2009, alleging a disability onset date of June 1, 2003. (Tr. 109-115). Her claim was denied initially on April 6, 2010, and on reconsideration on August 20, 2010. (Tr. 45-47, 50-51). An Administrative Law Judge ("ALJ") held a hearing on October 27, 2011, (Tr. 22-42), and subsequently denied benefits to Ms. Vogel in a written opinion. (Tr. 8-18). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Vogel suffered from the severe impairments of degenerative disc

disease and status post right knee replacement. (Tr. 13). Despite these impairments, the ALJ determined that Ms. Vogel retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can lift and carry 10 pounds occasionally, lesser amounts frequently, can sit for one hour, stand for 5 minutes, consistently on an alternate basis 8 hours a day, 5 days a week. The claimant is limited to SVP-3 and SVP-4 jobs, and should avoid heights, hazardous machinery temperature and humidity extremes, climbing ropes and ladders, and is limited to jobs that permit her to minimally elevate her leg occasionally.

(Tr. 14). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Vogel was capable of performing past relevant work as a data entry worker, and that she was not therefore disabled. (Tr. 18).

Ms. Vogel raises three primary arguments on appeal: (1) the ALJ failed to consider Listings 1.02 and 1.04; (2) the ALJ erroneously assessed the credibility of Ms. Vogel and a treating physician; and (3) the ALJ failed to assign proper weight to a treating physician's opinions. While I do not agree with Ms. Vogel's Listing argument, or her argument contesting her adverse credibility finding, I concur that the ALJ failed in his duty of explanation regarding the opinions of Ms. Vogel's treating physician, Dr. Murphy. Each argument is addressed in turn.

Ms. Vogel first argues that the ALJ failed to evaluate Listings 1.02 and 1.04, which pertain to major dysfunction of a joint and disorders of the spine, respectively. Pl.'s Mot. 7-11; 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.02, 1.04. A claimant bears the burden of demonstrating that her impairment meets or equals a listed impairment. *Kellough v. Heckler,* 785 F.2d 1147, 1152 (4th Cir. 1986). In order to meet a Listing, the claimant must show that her impairment meets all of the criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Ms. Vogel contends that her status post total right knee replacement and

subsequent surgeries "resulted in a major dysfunction of her right knee resulting in an inability to ambulate effectively pursuant to the criteria in Listing 1.02A." Pl.'s Mot. 8-9. Listing 1.02 requires a claimant to demonstrate major dysfunction of a joint "characterized by gross anatomical deformity…and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Listing 1.02 further requires a claimant to meet the criteria of either sub-section A or B. *Id.* Sub-section A, which is at issue here, requires a showing of "involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively." *Id.* An ALJ is required to discuss listed impairments and compare them individually to Listing criteria *only when* there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel,* 68 F. Supp. 2d 629, 645 (D. Md. 1999) (emphasis added). I find that no such ample evidence exists here to trigger the ALJ's duty to evaluate the Listing.

Ms. Vogel's medical record contains treatment notes spanning approximately ten years from Dr. Murphy, her treating physician.[1] *See* (Tr. 226-346). The treatment records indicate that Ms. Vogel underwent a knee replacement and suffered from chronic knee pain, swelling, limited range of knee motion, and difficulty with ambulation. On June 10, 2003, Ms. Vogel was "limping terribly" due to pain in her right knee. (Tr. 261). During that visit, Dr. Murphy noted that x-rays from April showed some narrowing of the medial joint line that was "not severe, but…not normal." *Id.* In nearly every visit with Dr. Murphy, Ms. Vogel complained of

---

[1] While Dr. Murphy's treatment records date back to August, 1999, this Court only considered records occurring after Ms. Vogel's alleged onset date of June 1, 2003.

significant knee pain. *See* (Tr. 261, 265, 266, 268, 269, 271, 274, 276, 277, 279, 280, 282, 285, 291, 292, 294, 297, 299, 301, 302, 304, 307, 308, 310, 312, 316, 317, 318, 320, 321, 323, 325, 327). Following her knee replacement surgery, Ms. Vogel's range of motion varied. Her lack of extension was more severe than her lack of flexion. Generally, she lacked between 10 to 25 degrees of extension. *See* (Tr. 268, 269, 272, 275, 278, 279, 280, 282, 286, 289, 293, 296, 297, 298, 301, 303, 305, 309, 311, 316, 317, 319, 320, 322, 324, 325, 329, 330).

In order to prevail on her Listing 1.02A argument, Ms. Vogel must also demonstrate that her knee impairment resulted in an inability to ambulate effectively. Her medical evidence of record, however, falls short of the Listing's requirements. Social Security Regulations define an "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B.2.b.(1). Examples of ineffective ambulation include, but are not limited to:

> the inability to walk without the use of a walker, two crutches, or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few stapes at a reasonable pace with the use of a single hand rail.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B.2.b.(2). Although several of Dr. Murphy's treatment records indicate that at various times Ms. Vogel limped and used a cane, walker, or knee brace to assist with ambulation, there is no evidence demonstrating that Ms. Vogel's knee impairments posed an extreme limitation on her ability to walk. In fact, none of the treatment records indicate that Ms. Vogel needed two canes, and there is only one instance of use of a walker. *See* (Tr. 263) (noting use of a knee brace that Ms. Vogel needed to wear "most of the time"); (Tr. 264) (recommending use of a knee brace all the time and noting that it "reduces the pain in the leg

4

when in it"); (Tr. 271) (noting Ms. Vogel's use of a knee brace for 14 days); (Tr. 272) (stating that Ms. Vogel was not doing well with the JAS splint); (Tr. 276) (recommending continued use of the JAS splint for extension); (Tr. 277) (noting limping); (Tr. 279) (noting Ms. Vogel's "moderate limp" and "continu[ed] use of a cane for ambulation); (Tr. 280) (noting continued use of a cane to ambulate); (Tr. 297) ( stating "[a]t times she uses the cane or most of the time, at time she has to use the walker because of pain and balance issues."); (Tr. 311) (noting that Ms. Vogel still walked with a moderate limp and used a cane to ambulate). The aforementioned medical evidence, which was documented over at least a four-year period, demonstrates that Ms. Vogel had some difficulty with ambulation. However, this difficulty was not so severe as to prohibit Ms. Vogel from performing routine ambulatory activities. *See* (Tr. 160) (indicating that she shops in stores and by phone approximately once per month for bread, cereal, and frozen foods); *but see* (Tr. 34) (stating that she cannot shop for groceries). Given the lack of evidence in the record establishing Ms. Vogel's inability to ambulate effectively, the ALJ's failure to evaluate Listing 1.02A is supported by substantial evidence.

Ms. Vogel also asserts, without explanation, that her severe impairment of degenerative disc disease meets the requirements of Listing 1.04. While Listing 1.04 requires the claimant to demonstrate a disorder of the spine, such as degenerative disc disease, the claimant must also show that the disorder results in "compromise of a nerve root…or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Listing 1.04 contains three sub-sections of criteria. The claimant must meet the criteria in at least one sub-section to satisfy the impairment. The 1.04(A) criteria include, "evidence of nerve root compression…" *Id.* The criteria in 1.04(B) and 1.04(C) include evidence of "spinal arachnoiditis" and "lumbar spinal stenosis," respectively. *Id.* Ms. Vogel's medical records show that x-rays from October, 2007 indicate "early grade 1 degenerative

5

spondylolisthesis at L3-4 above L4-S1 fusion." (Tr. 327, 367). However, Ms. Vogel's medical record is devoid of any evidence which establishes compromise of a nerve root, or the spinal cord. Similarly, Ms. Vogel points to no evidence satisfying the criteria of any of the 1.04 subsections. Therefore, the ALJ's failure to evaluate Listing 1.04 was likewise supported by substantial evidence.

Ms. Vogel next argues that the ALJ failed to properly evaluate her credibility and the credibility of her treating physician, Dr. Murphy. Pl.'s Mot. 14-17. The ALJ's adverse credibility finding of Ms. Vogel is supported by substantial evidence. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595.

The ALJ followed that process in this case. The ALJ concluded that Ms. Vogel's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 15). However, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. *Id.* The ALJ pointed out that Ms. Vogel's knee improved after the replacement surgery, and that, she "needed substantially less medication to alleviate her pain." *Id.* Additionally, the ALJ cited evidence showing Ms. Vogel's improved range of motion in her knee, improved stability, and lack of spinal stenosis or nerve root impingement. *Id.* The ALJ also did not give credence to Ms. Vogel's testimony that she spends up to 18 hours a day in bed, because it was unsupported by other medical evidence. *See* (Tr. 16, 30). Although Ms. Vogel's medical record contains some evidence that counters the progress

6

noted by the ALJ, that evidence, while conflicting, does not undermine the ALJ's ultimate conclusion regarding her credibility. The ALJ's finding that Ms. Vogel was not entirely credible rested on substantial evidence in the record.

The ALJ's decision to accord Dr. Murphy's opinions little weight because they were inconsistent, however, is not supported by substantial evidence. On several occasions, Dr. Murphy opined that Ms. Vogel was unable to work. *See* (Tr. 318, 322, 331, 371-72). The ALJ accorded these opinions "little weight" because, in his opinion, they were inconsistent with the objective medical evidence as a whole, and contrary to Dr. Murphy's own treatment notes. (Tr. 17). While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. § 404.1527(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig,* 76 F.3d at 590. The ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e); SSR 96–5p. Pursuant to Social Security regulations, the ALJ is required to "give good reasons" for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

The ALJ's summary of Dr. Murphy's treatment records was incomplete. The ALJ reasoned that although Dr. Murphy concluded that Ms. Vogel was unable to work, Dr. Murphy found that Ms. Vogel's condition was improving. (Tr. 17). The ALJ pointed out that Ms. Vogel was able to ride a bicycle during physical therapy, *see* (Tr. 17, 276), and that Ms. Vogel generally had good stability and could walk better than before her last surgery. *See* (Tr. 17, 316). However, the ALJ failed to paint a complete picture of Ms. Vogel's progress, which appears to have been short-lived and inconsistent. In just two visits following Ms. Vogel's successful bicycle therapy exercise, Dr. Murphy noted that, Ms. Vogel still had a "moderate limp" and that

7

he was concerned that, "she did not appear to be making any significant progress for the better." (Tr. 279). The visit during which Dr. Murphy stated that Ms. Vogel's stability was "very good" and that she "walk[ed] better than before the last operation" occurred just one month after a February, 2008 knee operation, which removed extensive scar tissue. *See* (Tr. 316, 337-39). Indeed, by June, 2008, Dr. Murphy noted that Ms. Vogel lacked about 15 degrees of extension, continued to suffer from chronic knee pain, and was "not doing anywhere near as well as I thought she would have." (Tr. 318-19). While it is not the role of this Court to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner's, *see Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990), in this case, the treatment notes cited by the ALJ simply do not have the import that the ALJ alleges. Given that the ALJ's assignment of weight is not supported by substantial evidence, remand is therefore appropriate. In so recommending, however, I express no opinion as to whether Dr. Murphy's opinions are true.

On a final note, as part of her credibility argument, Ms. Vogel contends that the ALJ ignored the findings of two state agency consulting physicians who both recommended postural limitations, and one who recommended a limitation on Ms. Vogel's ability in her lower extremities to push and/or pull. *See* Pl.'s Mot. 14-15; (Tr. 349-56, 360-61). Dr. Moore indicated that Ms. Vogel could occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 351). Dr. Moore also indicated that Ms. Vogel should never climb ladders, ropes, or scaffolds. *Id.* Dr. Najar recommended occasional limitations for climbing, balancing, stooping, and crouching, *see* (Tr. 361), and noted that Ms. Vogel should never crouch, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds. *Id.*

Ms. Vogel is correct that the ALJ failed to include these limitations in the RFC

assessment, which restricted Ms. Vogel to sedentary work. However, "postural [and environmental] limitations do not significantly erode the occupational base for a full range of sedentary work." *Sampson v. Astrue*, No. 5:07CV73, 2008 WL 4371664 (N.D. W. Va. Sept. 22, 2008), at *24. "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). Similarly, "limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base." SSR 96-9P, 1996 WL 374185, at *6.

However, a limitation related to the ability to stoop occasionally would "minimally erode the unskilled occupational base of sedentary work." *Id.* at *8. The ALJ did not include any stooping limitation in the RFC assessment, nor did he raise such a limitation in his discussion with the VE. Both Dr. Moore and Dr. Najar recommended occasional stooping limitations, which the ALJ did not heed. It is possible that the base of sedentary work for which Ms. Vogel qualifies could be reduced if a stooping limitation were imposed. On remand, therefore, the ALJ should consider whether an occasional postural limitation for stooping would have any effect on his finding that Ms. Vogel is capable of performing past relevant work as a data entry worker.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 14);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 12); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.


Dated: February 24, 2014 /s/
Stephanie A. Gallagher
United States Magistrate Judge